[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11831
Non-Argument Calendar

_____

D.C. Docket No. 1:96-cr-00067-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODRIGO BUITRAGO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 17, 2015)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

Rodrigo Buitrago, a <u>pro se</u> federal prisoner, appeals the district court's denial of his 18 U.S.C. § 3582(c)(2) motion for a sentence reduction based on Amendment 782 to the Sentencing Guidelines.  The district court determined that, although Buitrago was eligible for a sentence reduction based on Amendment 782, a sentence reduction was not warranted in Buitrago case.  After review, we affirm.

## I.  BACKGROUND

### A.    Convictions and Sentences

In 1996, a jury convicted Buitrago of conspiracy to import cocaine, in violation of 21 U.S.C. § 963 (Count 1), conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 2), and using and carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3).  Buitrago's convictions stemmed from a scheme to import cocaine from Costa Rica for distribution in the United States.

According to the district court's findings of fact at sentencing, in October 1995, Buitrago recruited a drug courier—who, unbeknownst to Buitrago, was a confidential informant working with law enforcement—to bring approximately 10 kilograms of cocaine from Costa Rica to the United States.  In addition to covering the informant's travel expenses, Buitrago also paid her $15,000 in courier fees after she returned.  During the November 1995 delivery, however, law

enforcement staged a theft of Buitrago's vehicle containing the cocaine from a Walmart parking lot.

Hoping to retrieve the cocaine or its monetary value of $180,000 or to kidnap the informant, Buitrago and a codefendant, Juan Jose Diaz, planned a home invasion of the informant's Miami residence. With Diaz's help, Buitrago recruited three codefendants, Francisco Gonzalez, David Santiago, and Carmelo Claudio, to conduct the robbery. In December 1995, while Buitrago remained in Tampa, Gonzalez, Santiago, and Claudio, armed with handguns, forced themselves inside the informant's Miami residence and chased the informant and her family. The informant locked herself in a bedroom and called 911. When the intruders could not break down the bedroom door, they held a gun to the heads of the informant's 72-year-old aunt and 11-year-old son, and threatened to kill them if the informant did not open the door. The informant and her family escaped further harm when the intruders heard the police arriving and fled.

Buitrago's presentence investigation report ("PSI") determined that Buitrago's base offense level for Counts 1 and 2 was 32, pursuant to U.S.S.G. § 2D1.1(a), and then applied: (1) a two-level increase because a dangerous weapon was possessed, pursuant to U.S.S.G. § 2D1.1(b)(1) (1995); (2) two two-level increases for a vulnerable victim and restraint of a victim, pursuant to U.S.S.G. §§ 3A1.1(b) and 3A1.3 (1995); and (3) a four-level increase because Buitrago was

3

an organizer, pursuant to U.S.S.G. § 3B1.1(a) (1995).  With a total offense level of 42 and a criminal history category of I, the PSI found that Buitrago's guidelines range for Counts 1 and 2 was 360 months to life imprisonment.

At sentencing, Buitrago objected to all the enhancements in the PSI, arguing, inter alia, that (1) he did not organize the importation scheme, and (2) he should not be held accountable for his codefendants' home invasion because he was not aware of it.  The district court overruled Buitrago's objections, finding, based on the trial evidence, that Buitrago negotiated with the drug courier regarding the pick-up and delivery of the cocaine, paid the courier fees, planned the home invasion robbery, and hired three of his codefendants to carry the home invasion out.

The district court sentenced Buitrago to concurrent life terms on Counts 1 and 2, and a statutory mandatory 60-month sentence on Count 3.  On appeal, this Court affirmed Buitrago's convictions and sentences.  See United States v. Gonzalez, 183 F.3d 1315 (11th Cir. 1999).

**B.     Section 3583(c)(2) Motion**

In 2015, Buitrago filed the present pro se § 3582(c)(2) motion, seeking a sentence reduction based on Amendment 782 to the Sentencing Guidelines.  Amendment 782 reduced by two levels the base offense level for most drug

4

quantities in U.S.S.G. § 2D1.1(c) and may serve as the basis for a sentence reduction.  See U.S.S.G. App. C, Amend. 782; Id. § 1B1.10(d).

Buitrago's § 3582(c)(2) motion also sought a reduction under Amendment 599, which implicated Buitrago's dangerous-weapon enhancement.  In a separate order, the district court granted Buitrago's § 3582(c)(2) motion as to Amendment 599 and reduced Buitrago's total sentence on Counts 1 and 2 from life to 365 months, at the high end of the amended guidelines range of 292 to 365 months.  Buitrago does not appeal that ruling.  Buitrago appeals only the district court's separate order as to Amendment 782.

With respect to Amendment 782 and the § 3553(a) factors, Buitrago pointed to his minimal role in the cocaine conspiracy, his personal circumstances, the lack of criminal history, the disparity between his total sentence and the sentences of his codefendants, his good behavior and rehabilitation while in prison, and the fact that he would be deported upon his release.  Buitrago maintained, as he had at his original sentencing, that he did not organize the importation scheme and had nothing to do with the home invasion robbery.

In response, the government admitted that Buitrago was eligible for a reduction under Amendment 782 and that his prison record and limited criminal history "cut in the defendant's favor."  The government opposed a sentence reduction, however, because of the seriousness of Buitrago's offenses, citing in

particular the home invasion that "could have caused serious injury or death" to the victims, which included an elderly woman and a child.

The district court denied Buitrago's § 3582(c)(2) motion as to Amendment 782, concluding that although a reduction was authorized, it was unwarranted "in light of the violent nature and circumstances of this case," as follows:

> Under section 3582(c)(2), a defendant is eligible for a sentencing reduction if Amendment 782 is applicable and the Court, in its discretion, determines that the authorized reduction is warranted, either in whole or in part, according to the factors set forth in section 3553(a).  In this case, after law enforcement had seized the drugs which formed the basis for the subject convictions, Defendant and accomplices went to an informant's home, brandished firearms, and threatened to kill the informant's 72-year-old aunt and 11-year-old son.  While Amendment 782 did reduce the guideline range applicable in his case making Defendant eligible for relief, this Court finds a reduction is unwarranted in light of the violent nature and circumstances of this case.

Thereafter, Buitrago filed a motion for reconsideration, arguing that the district court erred in finding that Buitrago participated in the home invasion. Buitrago contended that the trial evidence established "that he had no knowledge of such events, and that he did not know or ever m[e]et with any of these three individuals that perpetrated the home invasion."  Buitrago further pointed out that at the time of the home invasion, he "was 300 miles [a]way in Tampa where he resided unknowing [that] these [events were] occurring."  The district court denied the motion for reconsideration, stating:

Defendant maintains that he was not part of the violent home invasion which formed the basis for rejecting his Motion to Reduce Sentence, and seemingly argues that there is a need to correct a clear error or manifest injustice.  However, this Court finds that it has previously considered these issues and finds no reason to disturb its earlier ruling.

Buitrago appealed.

## II.  DISCUSSION

In considering a § 3582(c)(2) motion for a sentence reduction, the district court engages in a two-step process.  United States v. Bravo, 203 F.3d 778, 780 (11th Cir. 2000).  First, the district court "must recalculate the sentence under the amended guidelines," by substituting the new offense level and using it to determine the new advisory guidelines range with all the other original sentencing determinations held constant.  Id.; see also U.S.S.G. § 1B1.10(b)(1). Second, if the defendant's amended advisory guidelines range is lower, the district court must decide, in its discretion and in light of the 18 U.S.C. § 3553(a) factors, whether it will impose a new sentence within the amended guidelines range or retain the original sentence.  Id. at 781.

Here, the parties raise no issue with respect to the first step, so the only question is whether the district court abused its discretion in deciding not to impose a lower sentence.  See United States v. James, 548 F.3d 983, 984 n.1 (11th Cir. 2008) ("Once it is established that 18 U.S.C. § 3582 applies, a district court's

7

decision to grant or deny a sentence reduction is reviewed only for abuse of discretion.").[1]

At the second step, the district court "must consider the sentencing factors listed in U.S.G. § 3553(a), as well as public safety considerations, and may consider the defendant's post-sentencing conduct, in evaluating whether a reduction in the defendant's sentence is warranted and the extent of any such reduction." United States v. Williams, 557 F.3d 1254, 1256 (11th Cir. 2009).[2] While the district court must consider the § 3553(a) factors, it "commits no reversible error by failing to articulate specifically that applicability—if any—of each of the section 3553(a) factors, as long as the record demonstrates that the pertinent factors were taken into account by the district court." United States v. Eggersdorf, 126 F.3d 1318, 1322 (11th Cir. 1997); see also Williams, 557 F.3d at 1256 (explaining that the district court's consideration of the pertinent factors can be demonstrated through the "record as a whole").

---

[1]A district court abuses its discretion in a § 3582(c)(2) proceeding "if it fails to apply the proper legal standard or follow proper procedures in making its determination." United States v. Jules, 595 F.3d 1239, 1241-42 (11th Cir. 2010) (alterations and internal quotation marks omitted).

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, (3) the need to promote respect for the law and afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with education and vocational training and medical care; (6) the kinds of sentences available; (7) the guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1)-(7).

Here, the district court's denial of Buitrago's § 3582(c)(2) motion was not an abuse of discretion. The district court, in exercising its discretion, stated that it had considered the § 3553(a) factors and specifically cited the "violent nature and circumstances" of Buitrago's case as the basis for denying the motion. The district court was not required to discuss every § 3553(a) factor explicitly or to provide a lengthy discussion of its reason for denying the sentence reduction. See Eggersdorf, 126 F.3d at 1322.

Further, the record supports the district court's reason for declining to reduce Buitrago's sentence. Buitrago's offenses were extremely serious. Buitrago not only arranged for a drug courier to import a large amount of cocaine for distribution in the United States, Buitrago planned a home invasion in which three armed men entered his drug courier's home and threatened her family members with death because Buitrago thought the drug courier had stolen the cocaine. Two of the victims of the home invasion were an elderly woman and a child.

Although the district court misstated a fact in its initial ruling denying the motion—namely, that Buitrago went with his accomplices to the drug courier's home and was present during the home invasion—Buitrago brought this factual error to the district court's attention in his motion for reconsideration. In denying the reconsideration motion, the district court noted that it had "previously considered" Buitrago's role in the home invasion. We take this to refer to the

9

district court's finding at sentencing that, although Buitrago was not present at the home invasion, he planned it and recruited the three co-defendants who carried it out at his request. The district court then concluded that there was no basis for changing its ruling.

In other words, the record demonstrates that the district court was aware of its original misstatement and that this erroneous fact did not affect the district court's decision to deny Buitrago a sentence reduction. Thus, any factual error in the district court's initial ruling was harmless and does not require a remand. See United States v. Jackson, 613 F.3d 1305, 1310 n.7 (11th Cir. 2010) (applying harmless error to § 3582(c)(2) proceedings); Fed. R. Crim. P. 52(a).

Finally, the district court did not abuse its discretion in denying Buitrago's motion without first holding an evidentiary hearing. It is well-settled that a § 3582(c)(2) proceeding is not a resentencing. Dillon v. United States, 560 U.S. 817, 825, 130 S. Ct. 2683, 2690-91 (2010) (explaining that § 3582(c)(2) does not authorize a sentencing or resentencing, but instead permits a modification of the prison term by giving district courts "the power to 'reduce' an otherwise final sentence in circumstances specified by the [Sentencing] Commission"); see also United States v. Melvin, 556 F.3d 1190, 1193 (11th Cir. 2009). Further, "[a] defendant in a § 3582(c)(2) proceeding . . . is not afforded all of the protections he

10

was afforded at the original sentencing." United States v. Jules, 595 F.3d 1239, 1242 (11th Cir. 2010).

This Court has concluded that "each party must be given notice of and an opportunity to contest new information relied on by the district court in an § 3582(c)(2) proceeding," but the district court "need not permit re-litigation of any information available at the original sentencing." Id. at 1245. Furthermore, "although a hearing is a permissible vehicle for contesting any new information, the district court may instead allow the parties to contest new information in writing." Id.

Here, both parties had the opportunity to present new information relevant to the § 3553(a) factors and to make arguments in writing regarding the § 3553(a) factors before the district court ruled on the § 3582(c)(2) motion. In fact, Buitrago submitted new information in the form of prison records reflecting his coursework and good work history, which the government did not contest. Buitrago also filed two memoranda in which he exhaustively discussed the § 3553(a) factors. Although Buitrago continued to argue that he was not the organizer of the importation scheme and was not involved in the home invasion, in doing so he was contesting old, not new, information. The district court did not err in refusing to allow Buitrago to re-litigate these issues, which were resolved at Buitrago's original sentencing.

11

For all these reasons, the district court did not abuse its discretion in denying Buitrago's § 3582(c)(2) motion based on Amendment 782.

**AFFIRMED.**